UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CHAD S. JOHNSON,  :
        Plaintiff,  :
  :
v.  :
  :
SUPERINTENDENT ROBERT MORTON;  :
EDWARD BURNETT, Deputy of Security;  : **OPINION AND ORDER**
SERGEANT S. PETRIE; LT. CALVITTI (sued  :
herein as Kailvetti); CORRECTION OFFICER  : 21 CV 986 (VB)
D. ALLEN; CORRECTION OFFICER MASON  :
HAMILTON; CORRECTION OFFICER  :
TRAVIS SMALL; CORRECTION OFFICER  :
JAMES MAKEL; and CORRECTION  :
OFFICER RAYMOND ORTIZ,  :
        Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Chad S. Johnson, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants Superintendent Robert Morton ("Superintendent Morton"), Deputy of Security Edward Burnett ("Deputy Burnett"), Sergeant S. Petrie ("Sgt. Petrie"), Lt. Calvitti,[1] Correction Officer D. Allen ("C.O. Allen"), Correction Officer Mason Hamilton ("C.O. Hamilton"), Correction Officer Travis Small ("C.O. Small"), Correction Officer James Makel ("C.O. Makel"), and Correction Officer Raymond Ortiz ("C.O. Ortiz"). Plaintiff contends that, when he was incarcerated at Downstate Correctional Facility ("Downstate"), he was forced by defendants to sell illegal drugs to other inmates and was punished when he stopped selling them.

       Now pending is defendants' motion to dismiss the amended complaint. (Doc. #38).

---

[1]     Plaintiff spells Lt. Calvitti's name as "Kailvetti" in his complaint.

1

Plaintiff did not oppose the motion, despite having been granted multiple extensions of time to do so.  (Docs. ##42–43).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

During the complained-of events, plaintiff was incarcerated at Downstate, located in Fishkill, New York.  (Doc. #29 ("Am. Compl.") at ECF 6).[2]

Plaintiff alleges that, "[s]ometime in 2019," C.O. Hamilton planted contraband in plaintiff's cell at Sgt. Petrie's direction, and plaintiff was then placed in keeplock.  (Am. Compl. at ECF 8).

Plaintiff alleges his disciplinary hearing was conducted two days later by Lt. Calvitti.  (Am. Compl. at ECF 8).  According to plaintiff, Lt. Calvitti explained to him before the hearing began that "someone called on [plaintiff's] behalf" and plaintiff would be given time served.  (Id.).  Lt. Calvitti then allegedly told plaintiff what to say on the record.  (Id.).

Plaintiff alleges that, after the disciplinary hearing, Sgt. Petrie gave plaintiff a cell phone and drugs and warned plaintiff that, if he did not cooperate, Sgt. Petrie would "set [him] up again" and send plaintiff "further up north."  (Am. Compl. at ECF 8).  According to plaintiff,

---

[2]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Sgt. Petrie directed plaintiff to sell drugs and remit the proceeds to him in Bitcoin using the provided cellphone.  (See id. at ECF 8–9).

Plaintiff alleges that "[s]ometime towards the end of 2020," C.O. Allen informed plaintiff he knew about what Sgt. Petrie "[wa]s forcing [plaintiff] to do."  (Am. Compl. at ECF 9).  Plaintiff contends that, sometime thereafter, C.O. Allen informed plaintiff he was going to smuggle heroin into the facility and plaintiff "was going to sell it for him."  (Id.).  According to plaintiff, another inmate subsequently died of a heroin overdose in October 2020.  (Id.).

Plaintiff alleges he stopped selling drugs for Sgt. Petrie and C.O. Allen in January 2021, after making recordings of the officers directing him to do so and preserving those recordings in emails.  (Am. Compl. at ECF 10–11).  According to plaintiff, on January 9, 2021, he observed Sgt. Petrie and C.O. Allen having "a heated discussion," after which Sgt. Petrie visited his cell and asked plaintiff why he had stopped remitting proceeds from the drug sales.  (Id. at ECF 11).  When plaintiff informed Sgt. Petrie he no longer wished to do anything illegal, Sgt. Petrie moved him to the Special Housing Unit ("SHU") and ticketed him for possessing a cellphone.  (Id.).  Plaintiff further alleges Sgt. Petrie admitted at plaintiff's subsequent disciplinary hearing that he set plaintiff up.  (Id. at ECF 12).

Plaintiff alleges that he was subsequently moved from Downstate, and C.O. Small, Makel, and Ortiz intentionally destroyed his legal papers.  (Am. Compl. at ECF 11–12).

## DISCUSSION

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).³  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

---

³   Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

II. <u>Lack of Personal Involvement</u>

Superintendent Morton, Deputy Burnett, Lt. Calvitti, C.O. Hamilton, C.O. Makel, C.O. Ortiz, and C.O. Small argue plaintiff has not alleged facts sufficient to show they were personally involved in the alleged constitutional violations.

The Court agrees with respect to Superintendent Morton and Deputy Burnett only.

To state a claim under Section 1983, a plaintiff must allege facts showing a defendant's direct and personal involvement in the alleged constitutional deprivation.  See <u>Spavone v. N.Y.S. Dep't of Corr. Servs.</u>, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  Further, a defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights.  See <u>Tangreti v. Bachmann</u>, 983 F.3d 609, 619–20 (2d Cir. 2020).

Here, plaintiff alleges his constitutional rights were violated when he was forced to sell drugs in prison for Sgt. Petrie and C.O. Allen and was penalized when he stopped doing so. However, plaintiff does not allege any facts to suggest Superintendent Morton or Deputy Burnett knew or should have known about this alleged scheme.  Plaintiff contends these defendants should have known about it "in light of other incidents where inmates had cell phones that could have only been brought in by correctional staff" (Am. Compl. at ECF 13), but, even taking this allegation as true, it does not suggest that either Superintendent Morton or Deputy Burnett knew plaintiff had been given a cellphone, much less that they knew plaintiff was given a cellphone to facilitate drug sales for correction officers.

Accordingly, plaintiff's claims against Superintendent Morton and Deputy Burnett must be dismissed for lack of personal involvement.

III.  Failure to Protect

The Court liberally construes plaintiff's allegation that defendants conspired to force him to sell drugs as a failure-to-protect claim; that is, that defendants violated their Eighth Amendment responsibility to guarantee his safety by forcing plaintiff to participate in such a scheme.  See, e.g., Cooks v. Guterrez, 2011 WL 832469, at *3 (S.D. Tex. Mar. 3, 2011) (pro se plaintiff stated failure-to-protect claim against prison officials who "condone[d]" and "assist[ed]" drug smuggling in facility where plaintiff was incarcerated).[4]

A.  Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  Courts have construed the Eighth Amendment to "require[ ] prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).  For example, the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994).

To state a failure-to-protect claim, a prisoner must plausibly allege an objective component and a subjective component.  See Hayes v. N.Y.C. Dep't of Corr., 84 F.3d at 620.

To plead the objective component, a plaintiff must plausibly allege a prison official's conduct was sufficiently serious, meaning the conduct "pose[d] an unreasonable risk of serious damage to his health."  Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017).

To plead the subjective component, a plaintiff must plausibly allege a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by

---

[4] Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

6

failing to take reasonable measures to abate the harm." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d at 620. "Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).

B. Application

Here, plaintiff plausibly alleges a failure-to-protect claim against Sgt. Petrie and C.O. Allen.

First, plaintiff plausibly alleges Sgt. Petrie and C.O. Allen's conduct posed an unreasonable risk to his safety. Taking plaintiff's allegations as true, Sgt. Petrie and C.O. Allen forced plaintiff to sell illegal drugs to other inmates. Selling illegal drugs in prison to other inmates presents obvious and unreasonable dangers to plaintiff.

Second, plaintiff plausibly alleges Sgt. Petrie and C.O. Allen acted with requisite culpability. According to plaintiff, Sgt. Petrie and C.O. Allen personally supplied him with drugs and directed him to sell those drugs to other inmates, meaning they were personally aware of the substantial risk to plaintiff's safety. Cf. Lane v. Philbin, 2017 WL 4228888, at *8 (M.D. Ga. Sept. 22, 2017) (plaintiff stated failure-to-protect claim against corrections officer who, among other things, cooperated with inmates to smuggle contraband into the facility).

The Court recognizes that in the majority of cases concerning illegal drugs smuggled into prison, courts have rejected failure-to-protect claims brought by inmates "absent facts suggesting that the risk of exposure to drugs was greater inside the facility than outside of the facility." Kern v. St. Charles County, 2022 WL 1262507, at *6 (E.D. Mo. Apr. 28, 2022) (collecting cases). For example, in Nunez v. Salamack, 1989 WL 74940, at *1 (S.D.N.Y. June 26, 1989), the court dismissed plaintiff's claims that drug use inside Edgecombe Correctional Facility

interfered with his recovery and thus constituted cruel and unusual punishment, reasoning that plaintiff failed to "allege that the risk of exposure to drugs, and the deleterious effects of such exposure, were greater inside than outside Edgecombe." Here, in contrast, plaintiff plausibly alleges his exposure to drugs <u>was</u> greater inside Downstate than outside Downstate. That is, plaintiff alleges defendants used their positions as correction officers to force plaintiff to sell illegal drugs to other inmates in the facility, a situation that simply would not exist outside prison.

Accordingly, plaintiff's failure-to-protect claim against Sgt. Petrie and C.O. Allen may proceed.

IV.  <u>Retaliation</u>

Liberally construed, plaintiff attempts to assert Sgt. Petrie retaliated against him for refusing to continue to sell drugs by placing him in the SHU.

A.  <u>Legal Standard</u>

To state a First Amendment retaliation claim, "a plaintiff must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." <u>Dolan v. Connolly</u>, 794 F.3d 290, 294 (2d Cir. 2015).

With respect to the first element, a prisoner engages in constitutionally protected activity when he challenges prison conditions by filing a complaint, grievance, or civil-rights lawsuit. <u>See</u> <u>Dolan v. Connolly</u>, 794 F.3d at 294. In certain circumstances, "a prisoner's oral complaint may constitute protected speech." <u>White v. Westchester County</u>, 2018 WL 6726555, at *16 (S.D.N.Y. Dec. 21, 2018) (collecting cases). For example, a prisoner's "clear, specific statement

to [an officer]—that he would file a grievance . . . if [the officer] did not stop harassing him—is protected speech." Id.

With respect to the second element, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).

With respect to the third element, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009).

However, courts "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d at 295.  Accordingly, to survive a motion to dismiss, a prisoner asserting a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts.  Id.

B. Application

Here, plaintiff plausibly alleges a retaliation claim against Sgt. Petrie.

First, although it is a close question, the Court concludes plaintiff plausibly alleges he engaged in constitutionally protected activity when he told Sgt. Petrie he would no longer sell drugs for him.

Plaintiff alleges he told Sgt. Petrie he "no longer" wanted to "do anything illegal" and asked Sgt. Petrie "to leave [him] alone." (Am. Compl. at ECF 11).  But plaintiff's allegations also suggest that, at the time of this conversation, plaintiff was preparing to take further action

9

against Sgt. Petrie and C.O. Allen; for example, plaintiff alleges he made recordings of his conversations with C.O. Allen and preserved them in emails. (Id. at ECF 10). Thus, affording plaintiff special solicitude as a pro se litigant alleging civil rights violations, the Court infers plaintiff could have made a "clear, specific statement" to Sgt. Petrie that he was going to file a grievance or this lawsuit regarding the drug-dealing scheme, and thus that plaintiff has plausibly alleged he engaged in constitutionally protected speech. White v. Westchester County, 2018 WL 6726555, at *16. Sgt. Petrie may, however, renew his arguments on this point either at summary judgment following the close of discovery or at trial.

Second, plaintiff also plausibly alleges the other two elements of a retaliation claim. Plaintiff alleges Sgt. Petrie took adverse action against him by making a false disciplinary report and placing him in the SHU. See, e.g., Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004) (plaintiff plausibly alleged adverse action element of retaliation claim based on the "filing of false misbehavior reports" and "three weeks in keeplock"). Moreover, plaintiff alleges this adverse action was taken against him the same day he engaged in constitutionally protected activity, which is sufficient for the Court to infer a causal connection. See Espinal v. Goord, 558 F.3d at 129 (six-month gap between protected activity and retaliation sufficient to allege a causal connection).

Accordingly, plaintiff's retaliation claim against Sgt. Petrie may proceed.

V.  Conspiracy

Liberally construed, plaintiff attempts to assert a conspiracy claim against Sgt. Petrie, C.O. Allen, Lt. Calvitti, and C.O. Hamilton.

A.     Legal Standard

To state a Section 1983 conspiracy claim, a plaintiff must plausibly allege: "(1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

To survive a motion to dismiss, a plaintiff must make something more than "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights." Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002). However, "a plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, the pleadings must present facts tending to show agreement and concerted action." Concepcion v. City of New York, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008).

Moreover, "under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008). However, "[a]n exception to the doctrine exists where a plaintiff alleges facts that tend to show the defendants were pursuing personal interests wholly separate and apart from the entity." Harris v. City of Newburgh, 2017 WL 4334141, at *8 (S.D.N.Y. Sept. 27, 2017).

B.     Application

Here, plaintiff plausibly alleges a conspiracy claim against Sgt. Petrie, C.O. Allen, and C.O. Hamilton, but not against Lt. Calvitti.

With respect to Sgt. Petrie, C.O. Allen, and C.O. Hamilton, although plaintiff "does not allege specifically" these defendants "agreed to join a conspiracy," plaintiff's "allegations that

11

the officers worked in tandem . . . permits a plausible inference that they formed at least an implicit agreement." Iverson v. Surber, 2014 WL 12908065, at *6 (S.D.N.Y. Mar. 19, 2014). Plaintiff alleges (i) C.O. Hamilton planted contraband in plaintiff's cell at Sgt. Petrie's direction, which laid the groundwork for Sgt. Petrie to force plaintiff to sell drugs for him; (ii) C.O. Allen told plaintiff he was aware Sgt. Petrie was supplying plaintiff with drugs, and then personally started supplying plaintiff with drugs; and (iii) after plaintiff ceased remitting drug proceeds to Sgt. Petrie and C.O. Allen, plaintiff observed them having "a heated discussion," after which Sgt. Petrie visited his cell to question him about why he stopped doing so, and then moved plaintiff to the SHU. (Am. Compl. at ECF 11). These allegations are specific and plausible enough for the Court to infer these defendants agreed to inflict an unconstitutional injury on plaintiff. See, e.g., Pangburn v. Culbertson, 200 F.3d at 72.

Plaintiff does not, however, adequately allege a conspiracy claim against Lt. Calvitti. Plaintiff alleges Lt. Calvitti presided over plaintiff's disciplinary hearing after C.O. Hamilton planted contraband in plaintiff's cell, which plaintiff suggests was part of the ultimate scheme to convince plaintiff to sell drugs for Sgt. Petrie and C.O. Allen. But plaintiff does not allege any facts to suggest Lt. Calvitti had any kind of implicit or explicit agreement with the other defendants to smuggle drugs into Downstate. Thus, plaintiff has failed to state a conspiracy claim against Lt. Calvitti. See, e.g., Kernan v. N.Y.S. Dep't of Fin. Servs., 712 F. App'x 61, 66 (2d Cir. 2017) (summary order).

Lastly, plaintiff's claims are not barred by the intracorporate conspiracy doctrine. Plaintiff alleges defendants conspired to smuggle illegal drugs into Downstate for profit, which is plainly outside the scope of "the normal course of their corporate duties." Harris v. City of

Newburgh, 2017 WL 4334141, at *8.  Thus, the intracorporate conspiracy doctrine does not apply.

Accordingly, plaintiff's conspiracy claim against Sgt. Petrie, C.O. Allen, and C.O. Hamilton (but not Lt. Calvitti) may proceed.

VI.     Due Process

Liberally construed, plaintiff contends his due-process rights were violated when (i) he was placed in keeplock for two days after C.O. Hamilton planted contraband in his cell; (ii) Lt. Calvitti manipulated the disciplinary hearing that followed; and (iii) plaintiff was placed in the SHU by Sgt. Petrie after refusing to continue to sell drugs.

A.      Legal Standard

To state a due-process claim, a plaintiff must allege:  (i) "he possessed a liberty interest"; and (ii) defendants "deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).  That is, even if a plaintiff plausibly alleges he "did not receive the process that was due, he cannot succeed on his claims if he fails to establish a protected liberty interest." Taylor v. Rodriguez, 238 F.3d 188, 194 (2d Cir. 2001).

A prisoner's liberty interest is "implicated" by prison discipline "if it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." J.S. v. T'Kach, 714 F.3d 99, 106 (2d Cir. 2013).

In general, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (per curiam).

13

B.     Application

Here, plaintiff does not plausibly allege a liberty interest implicated by these three incidents.

First, with respect to being placed in keeplock for two days after C.O. Hamilton planted contraband in his cell in 2019, plaintiff does not allege the conditions of two-day keeplock were "more onerous than usual." Thus, he has not "allege[d] the existence of a liberty interest warranting due process protection" potentially implicated by this incident. Jones v. Tompkins, 715 F. App'x 101, 102 (2d Cir. 2018) (summary order).

Second, with respect to Lt. Calvitti's conduct at his disciplinary hearing, plaintiff does not plausibly allege any liberty interest was implicated by his cursory and scripted hearing. According to plaintiff, Lt. Calvitti sentenced him to time served. (Am. Compl. at ECF 8). Because plaintiff does not allege he was subject to any discipline following the hearing, he does not plausibly allege a liberty interest was implicated by the hearing. See, e.g., Durran v. Selsky, 251 F. Supp. 2d 1208, 1214 (W.D.N.Y. 2003) (dismissing prisoner's due-process claim based "on the alleged due process violations in connection with the disciplinary hearing" when he did not show his sentence "was in any way atypical or a significant hardship in relation to the ordinary incidents of prison life").

Third, with respect to being placed in the SHU following his alleged refusal to continue to sell drugs, plaintiff does not allege any facts regarding the length of his confinement in the SHU or its conditions. Thus, he has again not sufficiently "allege[d] the existence of a liberty interest warranting due process protection" implicated by this incident. Jones v. Tompkins, 715 F. App'x at 102.

Accordingly, plaintiff's due-process claim must be dismissed.

VII.	Access to Courts

Liberally construed, plaintiff attempts to assert an access-to-courts claim against C.O. Small, C.O. Makel, and C.O. Ortiz arising from their alleged destruction of his legal papers.

A.	Legal Standard

"The Supreme Court has grounded the right of access to the courts in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment." Raffaele v. City of New York, 144 F. Supp. 3d 365, 374 (E.D.N.Y. 2015). There are two types of claims arising from denial of this right: "forward-looking" claims and "backward-looking" claims. Sousa v. Marquez, 702 F.3d 124, 127–28 (2d Cir. 2012).

"Forward-looking" claims include claims "that systemic official action frustrated [a plaintiff's] ability to file a suit." Sousa v. Marquez, 702 F.3d at 127. In contrast, "backward-looking" claims are claims that a lawsuit "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 127–28.

To state a backward-looking claim, a plaintiff must plausibly allege a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," Davis v. Goord, 320 F.3d at 351, and that those actions caused the plaintiff to suffer "actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996).

To establish "actual injury," a plaintiff must allege defendants hindered his efforts to pursue a nonfrivolous legal claim. See Amaker v. Haponik, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). For example, a plaintiff might allege "the loss or inadequate settlement of a meritorious case, or the loss of an opportunity to seek some particular order of relief." Christopher v. Harbury, 536 U.S. 403, 413–14 (2002).

B. <u>Application</u>

Here, plaintiff has not plausibly alleged an access-to-courts claim.

The Court liberally construes plaintiff's allegations as a backward-looking claim; in other words, that C.O. Small, C.O. Makel, and C.O. Ortiz intentionally destroyed plaintiff's legal papers and that this destruction hindered plaintiff's efforts to pursue some legal claim.

However, plaintiff does not adequately allege any actual injury arising from the destruction of his papers. He does not identify what legal claim the destruction of his legal papers hindered, such as, for example, this litigation, any appeal of his criminal conviction, or any habeas corpus proceeding he has commenced. He also does not allege how any of those cases were harmed by the loss of his legal papers.

Accordingly, plaintiff's access-to-courts claim must be dismissed.

VIII. <u>Qualified Immunity</u>

Defendants have also not demonstrated they are protected by qualified immunity.

Qualified immunity shields government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

"A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Salim v. Proulx</u>, 93 F.3d 86, 89 (2d Cir. 1996). "Defendants bear the burden of establishing qualified immunity." <u>Garcia v. Does</u>, 779 F.3d 84, 92 (2d Cir. 2015).

"[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).  However, "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if the facts supporting the defense appear on the face of the complaint." Id.

Here, defendants argue they are entitled to qualified immunity because plaintiff does not plausibly allege his constitutional rights were violated.  As explained above, plaintiff plausibly alleges Sgt. Petrie, C.O. Allen, and C.O. Hamilton violated his well-established constitutional rights.  Specifically, plaintiff plausibly alleges that Sgt. Petrie, C.O. Allen, and C.O. Hamilton conspired to force plaintiff to sell illegal drugs in prison in violation of plaintiff's Eighth Amendment right to have reasonable measures taken on his behalf by prison officials to guarantee his safety when incarcerated; and that Sgt. Petrie retaliated against plaintiff for voicing a complaint about the purported scheme in violation of plaintiff's First Amendment right to petition the government for redress of his grievances.

Accordingly, the remaining defendants—Sgt. Petrie, C.O. Allen, and C.O. Hamilton—are not entitled to qualified immunity at this stage of the case.

## CONCLUSION

Defendants' motion to dismiss the amended complaint is GRANTED IN PART and DENIED IN PART.

Specifically, the following claims may proceed:

- Failure-to-protect claim against Sgt. Petrie and C.O. Allen;
- Conspiracy claim against Sgt. Petrie, C.O. Allen, and C.O. Hamilton; and
- Retaliation claim against Sgt. Petrie.

All other claims are dismissed.

Sgt. Petrie, C.O. Allen, and C.O. Hamilton shall answer the amended complaint by May 30, 2022.

By separate Order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate from the docket defendants Lt. Calvitti (herein sued as Kailvetti), Edward Burnett, Correction Officer Travis Small, Correction Officer James Makel, Superintendent Robert Morton, and Correction Officer Raymond Ortiz.

The Clerk is further instructed to terminate the motion. (Doc. #38).

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: May 16, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge