UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CHAD S. JOHNSON,  :
                   Plaintiff,  :
v.  :
  :  **OPINION AND ORDER**
SERGEANT S. PETRIE; CORRECTION  :
OFFICER D. ALLEN; and CORRECTION  :  21 CV 986 (VB)
OFFICER MASON HAMILTON,  :
  :
                  Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Chad S. Johnson, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants Sergeant S. Petrie ("Sgt. Petrie"), Correction Officer Duran Allen ("C.O. Allen"), and Correction Officer Mason Hamilton ("C.O. Hamilton").[1] Plaintiff contends that while he was incarcerated at Downstate Correctional Facility in Fishkill, New York ("Downstate"), defendants forced him to sell illegal drugs within the facility and then retaliated against him when he refused to continue doing so.

    Now pending is defendants' motion for summary judgment.  (Doc. #67).

    Plaintiff did not oppose the motion, despite having been granted multiple extensions of time to do so.  (Docs. ## 76–78).

    For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]    Several other defendants were previously dismissed from this case.  (Doc. #45).

1

**BACKGROUND**

Defendants have submitted a memorandum of law, a statement of material undisputed facts pursuant to Local Civil Rule 56.1,[2] and supporting declarations and exhibits. Together, they reflect the following background.

I.  Alleged Drug Distribution Schemes

At issue in this case are a series of events which began on January 2, 2019, when C.O. Hamilton conducted a search of plaintiff's cell at Downstate. (Doc. #29 ("Am. Compl.") at ECF 6; Doc. #72-1).[3] In the amended complaint, plaintiff alleges C.O. Hamilton, at Sgt. Petrie's direction, used this occasion to plant contraband in plaintiff's cell. (Am. Compl. at ECF 8). Following the search, C.O. Hamilton filled out a misbehavior report alleging he had recovered a Bic pen containing "broken glass shards" from a window ledge in plaintiff's cell. (Doc. #72-1). Thereafter, plaintiff was placed in keeplock[4] and confined to his cell.

---

[2]  Because plaintiff did not submit a counterstatement pursuant to Local Civil Rule 56.1(b), the Court may deem the facts in defendants' Rule 56.1 statement to be undisputed. See Local Civil Rule 56.1(c). Nonetheless, plaintiff is proceeding pro se and has failed to oppose the motion, so the Court must be "satisfied that the facts as to which there is no genuine dispute show that the moving party is entitled to summary judgment as a matter of law." Jackson v. Jackson, 2021 WL 981849, at *4 (S.D.N.Y. Mar. 16, 2021). Accordingly, the Court has independently reviewed the factual record with respect to each of defendants' statements of material undisputed fact.

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Plaintiff will be provided copies of all unpublished cases cited in this opinion. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3]  "ECF __" refers to page numbers automatically assigned by the Court's Electronic Filing System.

[4]  "Keeplock is a form of disciplinary confinement," in which inmates generally remain in their own cells but are "segregate[d] from other inmates and depriv[ed] of participation in

Six days later, Lieutenant Chris Calvitti ("Lt. Calvitti") conducted a disciplinary hearing regarding C.O. Hamilton's misbehavior report. (Doc. #73-1 at ECF 2). Plaintiff alleges that at the hearing, Lt. Calvitti said plaintiff had "somebody looking out for [him]," so if plaintiff pleaded guilty to the disciplinary charges, he would be given time served. (Doc. #74-3 ("Pl. Dep. Tr.") at 86–87).[5] Plaintiff did admit the charges, and received a time-served sentence.

A few days after the disciplinary hearing, according to plaintiff, he was called to meet with Sgt. Petrie. (Pl. Dep. Tr. at 89–90). Plaintiff claims Sgt. Petrie said, "see how easy I could have got you out of there"—apparently referring to the time-served sentence plaintiff received for his disciplinary infractions. (Id. at 92). Plaintiff contends Sgt. Petrie then reached into his desk, "pull[ed] out a touchscreen cellphone" (id. at 93), and demanded plaintiff sell K2 and marijuana for Sgt. Petrie at Downstate (id. at 100). Plaintiff testified he felt there was "no negotiation or wiggling room," for him to resist Sgt. Petrie's demands (id. at 94), so plaintiff indeed began selling drugs to other inmates.

Plaintiff alleges the inmates to whom he sold drugs paid for them via online payment applications, such as CashApp. (Pl. Dep. Tr. at 113–14). Plaintiff would then, allegedly, use the cellphone Sgt. Petrie provided to convert these funds to Bitcoin, which he would transfer into a digital wallet Sgt. Petrie had set up. (Id. at 114–15, 118).

Sometime in 2020, plaintiff contends C.O. Allen became the "steady" officer in plaintiff's housing complex. (Pl. Dep. Tr. at 122). Plaintiff claims C.O. Allen began coming to plaintiff's cell on a regular basis to brag about "beating inmate[s] up and then . . . cover[ing] it

---

normal prison activities." Jackson v. Moore, 2023 WL 4710869, at *3 (N.D.N.Y. Apr. 14, 2023).

[5] Citations to "Tr. at __" refer to the page number at the top right-hand corner of each transcript page.

3

up." (Id. at 127, 130, 131). According to plaintiff, C.O. Allen indicated he was aware plaintiff was selling drugs in the facility and "propositioned" plaintiff to sell drugs for him. (Id. at 129–30, 133). However, plaintiff testified he refused C.O. Allen's demands. (Id. at 136).

Plaintiff also claims that around this time, he began recording conversations with C.O. Allen in which the officer discussed drug sales and "beating up inmates." (Pl. Dep. Tr. at 136–37). These conversations purportedly "implicat[ed] Petrie and everybody else." (Id. at 138). Having allegedly preserved evidence of Sgt. Petrie and C.O. Allen's improper conduct, plaintiff contends he stopped sending Sgt. Petrie payments and eventually stopped distributing drugs for him altogether. (Id. at 144).

Plaintiff testified that on January 9, 2021, he observed Sgt. Petrie and C.O. Allen having "a heated discussion" in the officers' "bubble" of plaintiff's housing complex. (Pl. Dep. Tr. at 145–46, 162). According to plaintiff, Sgt. Petrie then came to his cell and asked plaintiff why he had stopped sending payments from the drug sales. (Id. at 147). Plaintiff contends he informed Sgt. Petrie he would no longer sell drugs in the facility, at which point Sgt. Petrie pulled out of his pocket the cell phone he had previously provided to plaintiff (id. at 177), and asked plaintiff for the password (id. at 174). When plaintiff refused to provide the password, he was "taken straight to the box," i.e., a segregated housing unit. (Id. at 175). Plaintiff was subsequently issued a misbehavior report for "contraband," "smuggling," and unauthorized cell phone use. (Doc. #73-1 at ECF 1).

A few days later, on January 14, 2021, plaintiff was transferred from Downstate to Great Meadow Correctional Facility in Comstock, New York ("Great Meadow"). (Doc. #74-4). Plaintiff attended a disciplinary hearing concerning Sgt. Petrie's misbehavior report at Great Meadow on February 3, 2021. (Doc. #73-1 at ECF 1).

4

II.     Use of Grievance Procedures

As discussed below, defendants' motion turns largely on whether plaintiff exhausted available administrative remedies to address defendants' alleged wrongdoing. Accordingly, the Court briefly reviews the facts pertinent to its administrative exhaustion analysis.

New York State's Department of Corrections and Community Supervision ("DOCCS") administers an Inmate Grievance Program ("IGP"), which enables inmates to raise and seek resolution of issues they encounter in DOCCS facilities. (Doc. #71 ("Seguin Decl.") at ¶ 4). The IGP grievance process consists of three stages: (i) an individual submits a complaint to the clerk of the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged incident; (ii) if the individual is dissatisfied with the IGRC's decision or recommendation, the individual may appeal to the superintendent of the facility within seven calendar days of the IGRC's response; and (iii) if dissatisfied with the superintendent's response, the individual may appeal, within seven days, to the Central Office Review Committee ("CORC"). (Id. at ¶¶ 4–6).

Plaintiff testified during his deposition that he did not file grievances related to the incidents alleged in this case while he was incarcerated at Downstate (see Pl. Dep. Tr. at 108, 195–96), and he believed he had only ever grieved one other incident before these events began (id. at 196). In a sworn declaration, Rachel Seguin, the director of the IGP, attests plaintiff has only ever appealed one grievance to CORC—a grievance he filed in 2018 concerning the handling of his legal mail. (Seguin Decl. ¶ 14; Doc. #71-2).

However, plaintiff testified that at his Great Meadow disciplinary hearing, he asked the hearing officer to contact DOCCS's Office of Special Investigations ("OSI"), with whom plaintiff says he met on two occasions. (Pl.'s Dep. Tr. at 192–93). Plaintiff also testified he wrote letters about the events at Downstate to "DOCCS's Commissioner's office" in Albany.

5

(Id. at 194–95). Lastly, plaintiff testified that, while at Great Meadow, he "tried to file" or "filed [a] grievance," but he was told he could not grieve "an incident that happened at another facility." (Id. at 195–96). Defendants point out that DOCCS Directive #4040, which lays out the IGP grievance process, expressly contradicts what plaintiff was told. (See Doc. #71-1 at 7 (providing a grievance "may only be filed at the facility where the incarcerated individual is housed, even if it pertains to another facility")).

## DISCUSSION

I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Id.

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v.

CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor, on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1988).  The burden to proffer evidence admissible pursuant to the Federal Rules of Evidence applies "equally to pro se litigants."  Varughese v. Mt. Sinai Med. Ctr., 2015 WL 1499618, at *4 (S.D.N.Y. Mar. 27, 2015) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)).  Bald assertions, unsupported by admissible evidence, are thus not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

Although courts must afford a pro se litigant special solicitude on a motion for summary judgment and read his submissions "to raise the strongest arguments that they suggest," such solicitude "does not relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment."  Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003).

II.     Administrative Exhaustion

Defendants argue they are entitled to summary judgment on all of plaintiff's claims because plaintiff failed to exhaust available administrative remedies prior to filing this lawsuit.

The Court agrees as to plaintiff's failure-to-protect and conspiracy claims but disagrees as to his retaliation claim.

A.     Legal Standard

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under . . . Federal law[] by a prisoner confined in any jail, prison, or

7

other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Furthermore, the PLRA requires "proper exhaustion[,] . . . which means using all steps that the agency holds out, and doing so properly."  Woodford v. Ngo, 548 U.S. 81, 90 (2006).

For a New York state prisoner to fully exhaust his claim, he must proceed through all three steps of the IGP, described above.  In other words, he must submit a complaint to the IGRC and, if dissatisfied, appeal to the superintendent and, ultimately, to CORC.  N.Y. Comp. Codes. R. & Regs. tit. 7, § 701.5.

Informal resolutions or relief outside the administrative procedures do not satisfy the exhaustion requirement.  See Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007).  Moreover, even when an inmate does not receive a response to a grievance, the inmate must still appeal to the next level of review.  Khudan v. Lee, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015).

On a motion for summary judgment, a defendant has the burden of demonstrating the plaintiff's failure to exhaust.  Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015).  A defendant can meet that burden by submitting evidence that a grievance process exists and applies to the underlying dispute.  Id.  If the defendant contends the plaintiff failed to properly exhaust, the defendant can submit evidence regarding the lack of grievances filed. Chambers v. Johnpierre, 2016 WL 5745083, at *7 (D. Conn. Sept. 30, 2016).

To withstand summary judgment, a plaintiff must offer more than conclusory allegations that he properly exhausted his administrative remedies.  See, e.g., Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010), aff'd, 441 F. App'x 816 (2d Cir. 2011) (summary order) (granting

summary judgment on exhaustion grounds when plaintiff provided only "conclusory allegations"). Indeed, a plaintiff's "bald assertions unsupported by evidence" that he exhausted all available administrative remedies "are insufficient to overcome a motion for summary judgment, even for a pro se plaintiff." See Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002). Further, such assertions, when contradicted by a plaintiff's own testimony, are insufficient to survive a motion for summary judgment. See Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) (a non-movant cannot create a question of fact sufficient to defeat summary judgment by submitting an affidavit that contradicts prior sworn testimony).

Notwithstanding the foregoing, a prisoner's duty to exhaust may be excused when: (i) an administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) "an administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use" with rules "so confusing that no reasonable prisoner can use them"; or (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 578 U.S. 632, 643–44 (2016).

B.  Analysis

As the Court has previously concluded, liberally construed, the amended complaint raises an Eighth Amendment failure-to-protect claim against Sgt. Petrie and C.O. Allen,[6] a Section

---

[6] Although a liberal reading of the amended complaint suggested plaintiff sold drugs for both Sgt. Petrie and C.O. Allen, plaintiff's deposition testimony dispels that suggestion. Plaintiff testified unequivocally that, at all times, he refused C.O. Allen's demands to sell drugs. (Pl. Dep. Tr. at 134, 136, 142). Thus, plaintiff cannot contend C.O. Allen exposed him to obvious and unreasonable dangers by forcing him to distribute drugs at Downstate. However, because the Court concludes plaintiff failed to exhaust administrative remedies as to this cause of action, it need not address whether plaintiff's failure-to-protect claim against C.O. Allen fails as a matter of law.

1983 conspiracy claim against Sgt. Petrie, C.O. Allen, and C.O. Hamilton, and a First Amendment retaliation claim against Sgt. Petrie.  (Doc. #45 at 6, 11–12).

Director Seguin's declaration demonstrates plaintiff never appealed any facility-level grievance concerning his allegations that defendants coerced him into selling drugs.  And nothing in plaintiff's deposition testimony suggests otherwise.  (See Pl. Dep. Tr. at 108–09, 196).  Accordingly, there is no genuine dispute plaintiff failed to exhaust administrative remedies.

Nevertheless, given that plaintiff is proceeding pro se, the Court considers whether his failure to exhaust should be excused because administrative remedies were "unavailable," either (i) due to defendants' threats or attempts at intimidation at Downstate, or (ii) because prison officials at Great Meadow prevented plaintiff from filing a grievance regarding events at Downstate after his transfer.

1. Threats or Intimidation at Downstate

The Court concludes administrative remedies were not unavailable to plaintiff at Downstate because he has not alleged anything more than a generalized fear of retaliation.

To determine whether fear of retaliation rendered grievance procedures unavailable, the Court must apply an objective test—"that is, would a similarly situated individual of ordinary firmness have deemed them unavailable."  Lucente v. County of Suffolk, 980 F.3d 284, 311–12 (2d Cir. 2020).  A general fear of retaliation, "unrelated to personal threats or intimidation connected to the grievance process," is not enough.  Gunn v. Ayala, 2023 WL 2664342, at *9 (S.D.N.Y. Mar. 28, 2023) (emphasis added); Grafton v. Hesse, 783 F. App'x 29, 31 (2d Cir. 2019) (summary order) ("We have held that where there has been no affirmative action by prison staff actually preventing prisoners from pursuing administrative remedies, those remedies are not unavailable under the PLRA.").

10

At his deposition, plaintiff testified that Sgt. Petrie and C.O. Allen implied they could harm plaintiff if he did not agree to participate in their drug schemes. (See, e.g., Pl. Dep. Tr. at 108–09, 93–94). But these assertions, even if credited, would show only that plaintiff feared reprisals if he did not distribute drugs for defendants. The record does not reveal defendants specifically threatened retaliation if plaintiff engaged in the grievance process. Cf. Wing v. Myers, 2019 WL 6732967, at *5–6 (S.D.N.Y. Dec. 11, 2019) (declining to dismiss unexhausted claims when the plaintiff alleged "he was not only afraid, but also that he was specifically threatened with 'get[ting] beat up again' if he filed a grievance"). It also bears noting that plaintiff felt safe refusing to sell drugs for C.O. Allen and—eventually—ceasing selling drugs for C.O. Petrie, notwithstanding their threats. (See Pl. Dep. Tr. at 141–42, 144).

Furthermore, plaintiff's testimony about the "atmosphere" of corruption at Downstate evinces only the kind of "generalized fear" courts find insufficient to excuse non-exhaustion. See Little v. Municipal Corp., 2017 WL 1184326, at *12 (S.D.N.Y. Mar. 29, 2017) (collecting cases).

In sum, the record does not reasonably permit the inference plaintiff was prevented from filing grievances because of defendants' intimidation or threats of retaliation. Therefore, plaintiff has not raised a genuine dispute of fact concerning the availability of administrative procedures at Downstate. See Khudan v. Lee, 2016 WL 7435364, at *2.

2. Thwarted Attempts at Great Meadow

As discussed above, plaintiff testified at his deposition that he either tried to file or did indeed file a grievance[7] at Great Meadow concerning defendants' conduct at Downstate, but he

---

[7] The Court acknowledges plaintiff variously testified that he "tried to file a grievance" (Pl. Dep. Tr. at 195 (emphasis added)), and that he "filed [a] grievance" (id. at 196 (emphasis added)). However, at the summary judgment stage, ambiguities must be resolved in plaintiff's

11

was told he could not grieve "an incident that happened at another facility."  (Pl.'s Dep. Tr. at 196).[8]

Under the framework set out in Ross v. Blake, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through . . . misrepresentation."  578 U.S. at 645.  This exception includes instances in which "the correctional facility's staff misled the inmate as to the existence or rules of the grievance process."  Id. at 644 n.3.

DOCCS Directive #4040 specifically provides a grievance may only be filed at the facility where an individual is incarcerated, "even if it pertains to another facility."  (Doc. #71-1 at 7).  And, liberally read, plaintiff's deposition testimony suggests he attempted to file a grievance at Great Meadow, but officials there rejected it because it pertained to events at another facility.  Construing the record evidence in plaintiff's favor, "the Court must infer that [Plaintiff's] grievance was never filed because prison authorities did not file it, not because Plaintiff did not submit it."  Jenkins v. Officer S, 2023 WL 6259667, at *7 (S.D.N.Y. Sept. 26, 2023) (collecting cases).  In sum, plaintiff's deposition testimony, given under oath, raises a genuine dispute of material fact as to whether prison officials prevented him from filing a grievance at Great Meadow.  See id.; Hudson v. Kirkey, 2021 WL 1966721, at *3–4 (N.D.N.Y.

---

favor as the non-moving party.  Accordingly, as discussed below, the Court must infer plaintiff submitted but was unable to file his grievance at Great Meadow.

[8]     Plaintiff also testified he asked a disciplinary hearing officer at Great Meadow to contact OSI, and he ultimately met with OSI to discuss the alleged incidents.  (Pl. Dep. Tr. at 192–94). Plaintiff further testified he wrote letters about the Downstate events to the Commissioner of DOCCS "in Albany."  (Id. at 194–95).  However, neither reports to OSI nor "letters and verbal communications" will "satisfy the exhaustion requirement under the PLRA."  Davis v. Torres, 2011 WL 3918098, at *4 (S.D.N.Y. Aug. 29, 2011) (collecting cases); Barrett v. Moody, 2023 WL 2898310, at *3 n.2, *5 (W.D.N.Y. Feb. 23, 2023) ("[N]on-statutory means of 'exhausting' remedies are legally insufficient.").

May 17, 2021). Indeed, defendants appear to concede this point in their briefing. (See Doc. #70 at 9).

Furthermore, in Williams v. Correction Officer Prianto, the Second Circuit concluded DOCCS's IGP procedures "only contemplate appeals of grievances that were actually filed . . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." 829 F.3d 118, 124 (2d Cir. 2016). Therefore, the court concluded the Williams plaintiff could not be faulted for failing to appeal a grievance prison officials had refused to file. So too, here: plaintiff's failure to appeal a facility-level grievance concerning the alleged events at Downstate may be excused if, as he suggests, officials at Great Meadow prevented him from filing the grievance in the first place. See id. at 126 ("The process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it."). Thus, although it presents a close question, the Court concludes plaintiff's deposition testimony has created an issue of fact on this score.

Accordingly, defendants have not carried their burden to show plaintiff failed to properly exhaust available administrative remedies at Great Meadow.

   3.  Surviving Claim

As discussed above, there is no genuine dispute that plaintiff never filed or attempted to file grievances related to defendants' misconduct while he was at Downstate, and his generalized fear of retaliation did not render administrative remedies unavailable there. Thus, because the events giving rise to plaintiff's failure-to-exhaust and conspiracy claims all occurred from approximately 2019 to 2020 at Downstate, defendants are entitled to summary judgment on those claims.

13

However, plaintiff was transferred to Great Meadow just five days after Sgt. Petrie's alleged retaliatory conduct—namely, placing plaintiff in the segregated housing unit for refusing to continue to sell drugs—far short of the twenty-one-day period set by the IGP.  Thus, to the extent the grievance process was unavailable to plaintiff at Great Meadow, he has raised a genuine issue of fact as to whether he should be excused from failing to exhaust administrative remedies concerning his First Amendment retaliation claim against Sgt. Petrie.

Accordingly, the Court must hold an exhaustion hearing to resolve this issue, at which it will assess the credibility of witnesses and weigh the relative strength of the evidence presented. Messa v. Goord, 652 F.3d 305 (2d Cir. 2011).  This hearing will pertain only to the administrative exhaustion of plaintiff's retaliation claim.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

Plaintiff's Section 1983 retaliation claim against Sgt. Petrie will proceed.  All other claims are dismissed.

By separate Order, the Court will schedule a telephone conference regarding the exhaustion hearing.  At that conference, the parties should be prepared to discuss the scheduling of and proposed procedures for the exhaustion hearing.

The Clerk is instructed to terminate the motion (Doc. #67).

The Clerk is further instructed to terminate defendants Correction Officers Duran Allen and Mason Hamilton.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Opinion and Order and all unpublished decisions cited herein to plaintiff at the address on the docket.

Dated: January 29, 2024
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge